ORAL ARGUMENT NOT YET SCHEDULED

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| STATE OF CALIFORNIA,<br><br>Appellee,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,<br><br>Appellants. | No. 26-5330, 26-5336 (consol.) |
| STATE OF CALIFORNIA,<br><br>Appellee,<br><br>v.<br><br>AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS AND AMERICAN PETROLEUM INSTITUTE,<br><br>Appellants. | |

**EPA'S MOTION TO EXPEDITE AND FOR A BRIEFING SCHEDULE**

The United States Environmental Protection Agency and Lee Zeldin, in his official capacity as Administrator of the United States Environmental Protection Agency (together, EPA), respectfully move to expedite this appeal from the preliminary injunction and stay orders entered on September 2 and 12, 2026, by the

U.S. District Court for the District of Columbia. *See* Orders, Exs. A-C. EPA respectfully requests that the Court enter the expedited briefing schedule proposed below, schedule oral argument in December 2026, and expedite the disposition of this preliminary-injunction appeal. EPA's proposed schedule provides California with more than the full amount of time provided by Rule 31(a)(1) to file and serve its brief. California has stated that it opposes this motion and will file a response. Appellants in No. 26-5336, American Fuel & Petrochemical Manufacturers and American Petroleum Institute, consent to the relief requested.

## BACKGROUND

The Clean Air Act authorizes EPA to set emission standards for new motor vehicles and new motor vehicle engines and expressly preempts States from setting their own. Under Section 209(a): "No State … shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines." 42 U.S.C. § 7543(a). That broad preemption provision "promote[s] uniformity in vehicle emissions regulations" by preventing States from imposing a patchwork of different standards. *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 105 (2025).

Under certain circumstances, California may obtain a preemption waiver from EPA to adopt and enforce its own emission standards. 42 U.S.C. § 7543(b). "No such waiver shall be granted," however, if EPA concludes that California

"does not need" such standards "to meet compelling and extraordinary conditions," or that the standards are "not consistent with" other specified requirements of the Clean Air Act. *Id.* § 7543(b)(1). Absent a valid preemption waiver, it remains unlawful for California to "adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines." *Id.* § 7543(a).[1] Over the years, EPA has issued various waivers to California.

California contends in this case that those preemption waivers are not subject to review by Congress under the Congressional Review Act (CRA), and that EPA unlawfully sent the waivers to Congress for review. California obtained two injunctions from the district court ordering EPA to "withdraw or correct" any "public statements" that it had determined that the waivers are subject to the CRA. *See* Orders, Exs. A, B.

The CRA creates a set of procedures for Congress to review and repeal an agency "rule." 5 U.S.C. §§ 801-08. The CRA provides that "[b]efore a rule can take effect, the Federal agency promulgating such rule shall submit" a report "to each House of the Congress." *Id.* § 801(a)(1)(A). Upon receipt of such a report,

---

[1] Similarly, section 209(e) of the Clean Air Act, 42 U.S.C. § 7543(e), preempts "most state regulation of nonroad vehicle and nonroad engine emissions," *Am. Rd. & Transp. Builders Ass'n v. EPA*, 554 Fed. App'x 18, 18 (D.C. Cir. 2014), and California may seek authorization from EPA to enforce certain standards under similar conditions to those imposed by section 209(b), *see* 42 U.S.C. § 7543(e)(2)(A).

Congress may enact a joint resolution "disapprov[ing] the rule." *Id.* § 802(a). To do so, the CRA creates a set of expedited legislative procedures for debating disapproval resolutions in Congress. *Id.* § 802. Under the CRA, "rule" "has the meaning given such term in" the Administrative Procedure Act (APA), with certain CRA-specific exceptions. *Id.* § 804(3). The APA, in turn, broadly defines "rule" as any "agency statement of general … applicability and future effect designed to implement, interpret, or prescribe law or policy." *Id.* § 551(4).

It is bedrock law in this Circuit that congressional reporting requirements are not subject to judicial review under the APA because congressional reporting requirements are "quintessentially within the province of the political branches to resolve as part of their ongoing relationships." *NRDC v. Hodel*, 865 F.2d 288, 319 (D.C. Cir. 1988) (R.B. Ginsburg, J.). On top of that, the CRA contains a comprehensive jurisdiction-stripping provision: "No determination, finding, action, or omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805. Accordingly, an agency's "determination" of whether an agency action is reportable to Congress under the CRA, and an agency's "action" of sending the report to Congress, are never subject to judicial review. *See, e.g.*, *Montanans For Multiple Use v. Barbouletos*, 568 F.3d 225, 229 (D.C. Cir. 2009) (Kavanaugh, J.) (section 805 "denies courts the power to void rules on the basis of agency noncompliance" with the CRA).

In February 2025, EPA submitted three Clean Air Act preemption waivers to Congress. *See* Compl. ¶ 13, D.D.C. No. 1:26-cv-2185, June 22, 2026, ECF 1. At the time, the Government Accountability Office had advised Congress that EPA's preemption waivers are orders and not rules under the CRA. The Executive Branch disagreed, however, and determined that EPA waivers are rules under the CRA, as explained by the Office of Management and Budget. *See* Letter from OMB to GAO (June 18, 2024), https://perma.cc/T5L3-USQV.

Congress ultimately resolved this debate and determined that EPA waivers are rules subject to the CRA. In May 2025, Congress enacted three bipartisan disapproval resolutions with respect to these "rule[s]" and declared "such rule[s] shall have no force or effect." H.R.J. Res. 87, 119th Cong. (2025); H.R.J. Res. 88, 119th Cong. (2025); H.R.J. Res. 89, 119th Cong. (2025). The President signed the Resolutions into law on June 12, 2025. Pub. L. Nos. 119-15, 16, 17; 139 Stat. 65, 66, 67 (2025).

After Congress disapproved the waivers in 2025, EPA again complied with its CRA obligations this year by sending Congress six additional waivers that allow California to enforce certain emission standards for motor vehicles and off-road engines.

Unhappy that EPA sent these six waivers to Congress, California sued EPA and moved for a preliminary injunction, arguing that EPA "reclassified" these

waivers from "orders" to "rules" and improperly sent them to Congress without authority under the CRA. California asserted an APA claim and an ultra vires claim. *See* Compl. ¶¶ 94-127, D.D.C. No. 1:26-cv-2185, June 22, 2026, ECF 1.

EPA opposed and moved to dismiss, arguing that California lacked standing to challenge a report sent to Congress, that the CRA's express jurisdiction-stripping provision and *Hodel* deprived the district court of jurisdiction, and that a report to Congress is not final agency action.

The district court granted California's motion, denied EPA's, and entered preliminary injunctions that ordered EPA to "take all necessary steps within the agency's control to restore the *status quo*," "withdraw or correct EPA's reclassification" of the six waivers "from orders to rules in all public statements," and enjoined and stayed EPA from "giving effect to the reclassification" of the waivers "and other such reclassifications." *See* Orders, Exs. A, B.

**ARGUMENT**

Because EPA appeals an order granting a preliminary injunction, this appeal is expedited by statute. *See* 28 U.S.C. § 1657 ("[T]he court shall expedite the consideration of … any action for temporary or preliminary injunctive relief."). In such appeals, "[a] party desiring a more expedited briefing … or expedited oral argument, should file a motion stating the basis for the requested relief." Circuit Rule 47.2(a). Here, EPA's proposed schedule is warranted because it conserves

judicial and party resources, and because EPA will argue on appeal that: (i) the district court entered the orders without jurisdiction, and (ii) the court's rulings impermissibly encroach on congressional oversight functions of both Congress and the Executive Branch.

**1.** An expedited briefing schedule will preserve judicial and party resources. In addition to appealing the preliminary injunction, EPA has appealed the district court's order denying the agency's motion to dismiss. *See* ECF 2193799 at 15; *see also Munaf v. Geren*, 553 U.S. 674, 691 (2008) ("Review of a preliminary injunction is not confined to the act of granting the injunction, but extends as well to determining whether there is any insuperable objection, in point of jurisdiction or merits, to the maintenance of the bill, and, if so, to directing a final decree dismissing it." (cleaned up)). If EPA prevails in this appeal, then no further proceedings are necessary in the district court. By contrast, if California prevails, then this Court's decision will inform the district court and the parties going forward, narrowing the issues for resolution.

**2.** Expedited review is also warranted because EPA contends on appeal that the district court enjoined an Executive Branch agency without jurisdiction. *See Nat'l Park Serv. v. Nat'l Tr. for Historic Pres. in the U.S.*, 609 U.S. ----, 2026 WL 2564318, at *3 (Aug. 31, 2026) (identifying injury to the Executive Branch where

the "district court likely exceeded its Article III authority to enjoin the activities of a coordinate branch of government.").

EPA will argue that the district court lacked jurisdiction for two reasons. First, California lacks standing to challenge EPA's determination that the waivers are reportable to Congress under the CRA. The district court concluded that California plausibly alleged that, if EPA someday withdraws the waivers through administrative proceedings, EPA's determination that the waivers are rules would deprive the State of the procedural protections of 5 U.S.C. § 558(c), which prescribes requirements for withdrawing a license, which is a type of order under the APA. *See* Ex. C (Op.) at 53. But this hypothetical injury cannot support standing because EPA has not even proposed withdrawing the waivers, much less taken any concrete steps to do so, and because this injury has no connection to EPA's CRA compliance. MTD Reply at 14, D.D.C. No. 1:26-cv-2185, July 28, 2026, ECF 32.

This argument is strongly reinforced by the Supreme Court's recent decision in *Trump v. California*, 2026 WL 2473573, at *4 (Aug. 24, 2026). The Court held that an executive order directing the U.S. Postal Service to initiate a proposed rulemaking did not inflict an Article III injury on California before the agency issues a final rule. Before a final rule, any injury depends on "a string of speculations" about what the agency might finalize. *Id.* Similarly, here, EPA has

not announced or taken any steps to withdraw any of the waivers, much less finalized a waiver withdrawal. Any injury to California thus depends "on contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* (cleaned up and quoting *Trump v. New York*, 592 U.S. 125 (2020)).

Second, EPA will argue on appeal that the CRA expressly deprives the district court of jurisdiction to review California's claims. The statute provides that "[n]o determination, finding, action, or omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805. This text is broad and dispositive: transmission of the waivers to Congress for review under the CRA is an "action" under the CRA, and EPA's determination that each waiver is a "rule" that must be reported to Congress is a "determination" under the CRA. Section 805 therefore bars review of California's claims. *See Mullin v. Doe*, 146 S. Ct. 2121, 2134 (2026) (holding that each "discrete decision" made in the process of reaching a final decision to terminate temporary protected status determinations was a "determination" under the relevant statute's judicial-review bar); *see also Montanans for Multiple Use*, 568 F.3d at 229.

The jurisdiction-stripping provision applies with particular force in this case in light of *Hodel*, 865 F.2d at 319, which holds that the "presumption of reviewability of agency action is woefully inapposite" to congressional reporting

requirements, and that congressional reporting requirements are not reviewable under the APA without express authorization from Congress.

The district court's analysis of section 805 makes at least four errors. First, the district court began by applying "a strong presumption favoring judicial review of administrative action," Op. at 35, but that presumption is "woefully inapposite" here, *Hodel*, 865 F.2d at 319. Second, the court ignored the statute's plain meaning, offering no textual reason for why EPA's determination that waivers are rules under the CRA is not directly a "determination" "under" the CRA. Op. at 37-38. Third, the court concluded it could review EPA's determination that waivers are rules under the CRA because the CRA borrows the definition of "rule" from the APA. Op. at 38-39. But that the CRA borrows the APA definition does not make EPA's determination—for the purpose of complying with the CRA—any less a determination under the CRA. Fourth, stretching to find some agency action to review apart from the report EPA sent to Congress, the court concluded that EPA "reclassified" the waivers from "orders" to "rules" in a separate, freestanding agency action reviewable under the APA. Op. at 31-34. But the only action EPA took was to send the report to Congress. EPA's determination that the waivers are rules is embodied in that report. And a court cannot review "an abstract decision apart from specific agency action." *Biden v. Texas*, 597 U.S. 785, 809 (2022).

**3.** EPA will also argue on appeal that, in side-stepping Article III standing and the jurisdiction-stripping provision of the CRA, the district court's rulings interfere with "on-going relationships between the two political branches in our system of separated powers." *Hodel*, 865 F.2d at 319. Despite binding precedent in *Hodel* and an express jurisdiction-stripping provision, the district court purported to decide which types of agency action qualify for congressional review, improperly designating itself "as an ersatz proxy for Congress." *Id.*

Particularly egregious is the court's purported determination on the merits that EPA's preemption waivers are not rules subject to congressional review "under the CRA." Op. at 63-65. Not only is that determination "a judgment peculiarly for Congress to make in carrying on its own functions in our constitutional system," *Hodel*, 865 F.2d at 319, but it is a judgment that Congress *already made* just last year when it used the CRA to review three preemption waivers and to enact joint resolutions invalidating them. *Supra* p.5. The court's ruling usurped Congress's exclusive role in congressional oversight, interfered with Congress's own assessment that EPA's preemption waivers are subject to CRA review, and interfered with the Executive Branch's communications to Congress as well. Indeed, California plainly intends these orders to influence congressional proceedings. *See* Pl.'s Mot. for Expedited Ruling at 1, D.D.C. No. 1:26-cv-2185, Sept. 11, 2026, ECF 53 (contending that the House "would …

benefit" from the district court's ruling on California's second motion for a preliminary injunction); Order, Ex. B (granting motion to expedite and second motion for an injunction). This Court should therefore act swiftly to address these important issues.

**4.** Accordingly, EPA proposes the following schedule, which provides California with more than the full amount of time provided by Rule 31(a)(1) to file and serve its brief:

(1) EPA's principal brief and the appendix shall be filed and served on October 14, 2026;

(2) Intervenors American Fuel & Petrochemical Manufacturers and American Petroleum Institute's brief shall be filed and served on October 16, 2026;

(3) California's principal brief shall be filed and served on November 20, 2026;

(4) EPA's reply brief, if any, shall be filed and served on December 16, 2026.

## CONCLUSION

For the foregoing reasons, this Court should expedite the briefing schedule based on the schedule proposed above, schedule any argument in December 2026, and expedite the disposition of this appeal.

Respectfully submitted,

ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*

ROBERT N. STANDER
*Deputy Assistant Attorney General*

*/s/ Jeffrey Hughes*
ROBERT P. STOCKMAN
JEFFREY HUGHES
United States Department of Justice
P.O. Box 7611
Washington D.C. 20044
Tel: (202) 532-3080
jeffrey.hughes@usdoj.gov

*Counsel for Appellants*

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing motion complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because it contains 2,542 words, excluding the parts of the filing exempted by Fed. R. App. P. 32(f). The filing complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (a)(6) because it was prepared in a proportionately spaced typeface using Microsoft Word in Times New Roman fourteen-point font.

*/s/ Jeffrey Hughes*
Jeffrey Hughes

## CERTIFICATE OF PARTIES AND DISCLOSURE STATEMENT

Pursuant to Circuit Rule 27(a)(4), the undersigned counsel states as follows:

**A. Parties and Amici**

Plaintiff-Appellee. Plaintiff in the district court and appellee in this appeal is California.

Defendants-Appellants. Defendants in the district court and appellants in this appeal are the United States Environmental Protection Agency and Lee Zeldin, in his official capacity as Administrator of the United States Environmental Protection Agency.

Intervenors. Intervenor-Defendants in the district court and appellants in this appeal are American Fuel & Petrochemical Manufacturers and American Petroleum Institute.

**B. Disclosure Statement**

A disclosure statement is not required because movants are governmental parties in a noncriminal case. *See* Fed. R. App. P. 26.1; Cir. R. 26.1.

*/s/ Jeffrey Hughes*
Jeffrey Hughes