ORAL ARGUMENT NOT YET SCHEDULED

Nos. 26-5330, 26-5336 (consolidated)

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

STATE OF CALIFORNIA,
*Appellee*,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY, ET AL.,
*Appellants*.

On Appeal from the United States District Court
for the District of Columbia
No. 1:26-cv-02185-BAH

# CALIFORNIA'S OPPOSITION TO EPA'S MOTION TO EXPEDITE AND FOR A BRIEFING SCHEDULE

ROB BONTA
*Attorney General of California*
ANNADEL A. ALMENDRAS
*Senior Assistant Attorney General*
MYUNG J. PARK
*Supervising Deputy Attorney General*

NATALIE COLLINS
KATHERINE GAUMOND
M. ELAINE MECKENSTOCK
*Deputy Attorney General*
STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
1515 Clay Street, 20th Floor
P.O. Box 70550
Oakland, CA 94612-0550
Telephone: (510) 879-0299
Fax: (510) 622-2270
Elaine.Meckenstock@doj.ca.gov
*Attorneys for Appellee*

October 5, 2026

## INTRODUCTION

The United States Environmental Protection Agency (EPA) seeks to further expedite its appeal of two preliminary injunction orders beyond the acceleration already provided by statute and this Court's Rule 47.2. Yet EPA identifies no irreparable injury the agency or the public will suffer if this appeal proceeds in the already expedited course of a typical preliminary injunction appeal[1]—which is no doubt why EPA has not sought a stay of the preliminary injunction orders. EPA submits to *this Court* that those orders "interfere with 'on-going relationships between the two political branches in our system of separated powers.'" Mot. 11 (quoting *NRDC v. Hodel*, 865 F.2d 288, 319 (D.C. Cir. 1988)). But EPA is telling *the district court* precisely the opposite: "EPA does not read the Court's Order to require the agency to attempt to withdraw [documents submitted] to Congress or otherwise compel or forbid EPA to communicate with Congress." EPA's First Status Report (Exh. 1) at 3; EPA's Second Status Report (Exh. 2) at 2. EPA cannot establish irreparable injury here by contradicting its own representations—about the same orders—to the court below.

The agency also argues that further expedition is warranted "because EPA contends on appeal that the district court enjoined an Executive Branch agency

---

[1] *See* D.C. Circuit, *Handbook of Practice and Internal Procedures* (as amended through September 17, 2026) ("Cir. Handbook") at 34.

without jurisdiction." Mot. 7. But the federal government's disagreement with a district court's jurisdictional analysis is an everyday occurrence in this Court, not an extraordinary circumstance that warrants jumping the line even *more* than this Court's rules already provide for preliminary injunction appeals.

Finally, EPA claims additional expedition will conserve judicial and party resources. But that claim rests entirely on EPA's belief that it should prevail on certain grounds on appeal, Mot. 7, because if EPA is wrong, resolution of this case would be advanced even more by simply proceeding to judgment in the court below. If an appellant's confidence in the merits of its positions sufficed for additional expedition, this Court would ultra-expedite every appeal. Moreover, EPA's eyebrow-raising proposed schedule—under which this Court would hear argument by the end of December based on briefing not completed until December 16th—is more likely to hamper than aid this Court's consideration of the issues in this case.

The motion for *further* expedition should be denied, and this Court should set a briefing schedule in the normal course for appeals from preliminary injunctions.

## BACKGROUND

### A. Clean Air Act Section 209 Preemption Waivers

Under Section 209 of the Clean Air Act, 42 U.S.C. § 7543, States are generally preempted from setting certain motor vehicle and engine emission

standards, but EPA is required to waive that preemption for California, upon request from the State, absent certain facts that support rejecting the request. *Id.* § 7543(b)(1), (e)(2)(A).[2] To ensure manufacturers are subject to no more than two sets of standards (EPA's and California's), Congress determined that California is the only State that may request or receive such waivers. *See Ohio v. EPA*, 98 F.4th 288, 294 (D.C. Cir. 2024), *rev'd and remanded in part sub nom. Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100 (2025). However, other States may adopt California's standards as their own, if they so choose, and may enforce standards for which California has a waiver, under certain conditions. 42 U.S.C. §§ 7507, 7543(e)(2)(B).

EPA may only deny California's request for a Section 209 waiver if EPA can find "one of the factual circumstances set out in" the statute. *Motor & Equip. Mfrs. Ass'n v. EPA* ("*MEMA I*"), 627 F.2d 1095, 1121 (D.C. Cir. 1979); 42 U.S.C. § 7543(b)(1), (e)(2)(A). Thus, EPA's "modest" role in waiver proceedings, *MEMA I*, 627 F.2d at 1119, is limited to adjudicating "whether the parties favoring a denial of the waiver have shown that the factual circumstances exist in which Congress

---

[2] Section 209(e)(2)(A), 42 U.S.C. § 7543(e)(2)(A), uses the verb "authorize," rather than the verb "waive" as in Section 209(b)(1), *id.* § 7543(b)(1). But EPA's actions under both sections have essentially the same effect. *See Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075, 1081 (D.C. Cir. 1996). For brevity and readability, California uses the term "waiver" herein to refer to the grant of a request under either subsection.

intended denial of the waiver," *id.* at 1122. In accord with that "sharply restricted" statutory role, *id.*, EPA has granted each of California's more than 100 waiver requests, *see* Mot, Exh. C ("Op.") at 2, 9, with very occasional partial denials delaying enforcement of the State's latest standards to allow manufacturers sufficient time to comply, *e.g.*, 36 Fed. Reg. 8172 (Apr. 30, 1971).[3]

Congress has amended the Clean Air Act in relevant ways several times. It elected, in 1977, "to expand California's flexibility," *MEMA I*, 627 F.2d at 1110, while "express[ing] general approval of the Administrator's waiver decisions," *id.* at 1122; *see also Ohio*, 98 F.4th at 296. Later, in 1990, Congress effectively copied the original waiver provision (which covered new motor vehicles and their engines) into a new subsection covering vehicles and engines operated off-road (e.g., bulldozers, ships, and handheld equipment). *Compare* 42 U.S.C. § 7543(b)(1) *with id.* § 7543(e)(2)(A).

### B. Earlier Trump Administration Attacks on Section 209 Waivers

In 2019, the first Trump Administration purportedly withdrew parts of a 2013 waiver—something EPA had never done before in a half-century of waiver proceedings. *See* 87 Fed. Reg. 14,332, 14,352 (Mar. 14, 2022) ("the Agency had never [previously] withdrawn any waiver"). In 2022, EPA reversed that

[3] EPA has only denied one California request in full, Op. 2, and that denial was promptly reversed, 74 Fed. Reg. 32,744, 32,745 (July 8, 2009).

withdrawal action. *Id.* at 14,332. But, from the outset, the second Trump Administration expressed hostility to Clean Air Act preemption waivers granted to California. In a day one Executive Order, President Trump announced that at least certain "state emissions waivers" should be "terminat[ed]," 90 Fed. Reg. 8353 (Jan. 29, 2025), and directed EPA to "develop and begin implementing action plans to suspend, revise, or rescind" them, *id.* at 8354.

Although EPA's action plan has never been made public, at least one part of the plan became clear in February 2025 when the President and EPA Administrator announced that the agency had reclassified three preemption waivers from adjudicatory orders into rules.[4] Five days later, EPA submitted those three waivers to Congress as though they were subject to the Congressional Review Act (CRA), 171 Cong. Rec. H875 (daily ed. Feb. 26, 2025). That statute provides for expedited congressional review of certain federal agency "rule[s]," 5 U.S.C. § 801, borrowing (and then narrowing) the definition of "rule" from the Administrative Procedure Act (APA), *id.* § 804(3). Notably, when it had granted each of those three waivers, EPA had reiterated its longstanding position—held consistently across administrations led by both parties—that waivers are adjudicatory orders, not rules, and are thus not subject to myriad requirements appliable only to rules

[4] EPA, *Trump EPA to Transmit California Waivers to Congress in Accordance with Statutory Reporting Requirement* (Feb. 14, 2025), available at https://perma.cc/GDF5-HVM2, last visited October 1, 2026.

(including those under the CRA). *E.g.*, 88 Fed. Reg. 20,688, 20,726 (Apr. 6, 2023). When EPA announced its reclassification of these three waivers, it neither acknowledged nor explained its change in position. *See supra* n.4.

Congress ultimately passed resolutions purporting to disapprove of all three of the waivers that EPA reclassified and submitted as "rules" in 2025. H.R.J. Res. 87, 119th Congress (2025); H.R.J. Res. 88, 119th Congress (2025); H.R.J. Res. 89, 119th Congress (2025). Along the way, members of both the House and Senate credited EPA's reclassification and submission of the three waivers as rules with "giving Congress the opportunity to reject California's" regulations.[5] But the Government Accountability Office (GAO) and the Senate Parliamentarian—both nonpartisan arbiters who advise Congress on the applicability of the CRA—concluded that Clean Air Act preemption waivers are not rules and are not subject to the CRA.[6]

[5] EPW Republicans (@EPWGOP), X (Feb. 14, 2025), https://perma.cc/5WMM-DQVJ, last visited October 2, 2026; *see also e.g.*, 171 Cong. Rec. S3087 (daily ed. May 21, 2025) (Senator Capito describing agency submission as sufficient to "trigger[] my right as a Senator to introduce this resolution").

[6] *See* GAO Report B-337179 at 1, 6-8, available at https://www.gao.gov/assets/880/875948.pdf, last visited October 2, 2026; 171 Cong. Reg. S3020 (daily ed. May 21, 2025) ("the Senate Parliamentarian has advised … that legislation to overturn these waivers does not—does not—qualify for expedited consideration under the Congressional Review Act.").

The Senate thus had to change its internal rules for determining when fast-track procedures—like those the CRA prescribes—apply to disapproval resolutions. Specifically, the Senate voted to allow the agency's labeling of an action as a "rule" to be the trigger, regardless of whether the action meets the statutory definition. *See e.g.*, 171 Cong. Rec. S3140 (daily ed. May 22, 2025) ("So we worked to make sure that we were clarifying one simple thing . . . this one simple question: When an Agency says it is a rule, is it a rule? . . . . The answer is, yes, it is a rule. And then we acted on that.").

The President signed the three resolutions on June 12, 2025, after which California and other States filed suit in the District Court for the Northern District of California, alleging, *inter alia*, that the resolutions are unconstitutional. *California v. United States*, Case No. 4:25-cv-04966-HSG (N.D. Cal. filed June 12, 2025). That litigation is ongoing.

### C. The EPA Actions at Issue and Early Procedural History

One year after the President signed the three 2025 resolutions, EPA suddenly announced it had reclassified four more Section 209 waivers from "orders" into "rules." Exh. 3. The June 2026 batch of reclassifications included one waiver granted as far back as 2009 and another granted in 2013. *Id.* at 2. In its actions granting each of these waivers, EPA had expressly designated them as orders, not rules—consistent with its longstanding position. *E.g.*, 74 Fed. Reg. at 32,784. As

with the 2025 reclassifications, EPA's announcement failed to acknowledge that prior position or explain the change. *See* Exh. 3. EPA submitted these four waivers to Congress, labeling them as "rules" subject to the CRA on the same day it announced the reclassifications. *See id*.

California filed this suit in the District Court for the District of Columbia, alleging that both the reclassifications and submissions to Congress violated the APA or were ultra vires. *California v. EPA*, Case No. 1:26-cv-02185-BAH (D.D.C. filed March 12, 2026) ("DDC Dkt."), ECF 1. California promptly sought a preliminary injunction. *Id.*, ECF 13. The Court granted intervention as of right to American Fuel and Petrochemical Manufacturers and American Petroleum Institute (collectively, Intervenors). *Id.*, August 4, 2026 Minute Order.

EPA and Intervenors opposed California's preliminary injunction motion and moved to dismiss the complaint, primarily asserting that the district court lacked jurisdiction pursuant to a provision of the CRA, 5 U.S.C. § 805, that precludes judicial review of actions "under" that statute. DDC Dkt., ECF 21, 22-5, 32. EPA and Intervenors also argued that the reclassifications and submissions effectuated no change in the status quo and thus that California lacks standing (although Intervenors asserted *they* have standing to intervene, *id.*, ECF 22-1 at 6-7) and none of the agency actions were final. *Id.*, ECF 21, 22-5, 32. Only Intervenors

defended the merits of EPA's assertion that the four waivers are "rules," rather than "orders." *See id.*, ECF 22-5 at 20-24.

Meanwhile, on July 12, 2026, while the preliminary injunction motion and motions to dismiss were being briefed, EPA announced it had reclassified two more waivers into "rules" and submitted those to Congress as such. Exh. 4. After the court resolved the initial motions (as discussed further below), California supplemented its complaint to expressly encompass all six waivers reclassified in 2026—the four reclassified in June plus the two reclassified in July. DDC Dkt., ECF 48. California then sought a second preliminary injunction order expressly encompassing those two July reclassifications. *Id.*, ECF 49.

### D. The District Court's Orders on Appeal

On September 2, 2026, the district court issued a memorandum opinion and order, granting California preliminary relief and denying the motions to dismiss. Mot., Exh. A ("First PI Order"), Exh. C ("Op."). The court began by concluding that EPA's reclassifications and submissions were distinct actions. Op. 31-33. It then concluded it lacked jurisdiction to review EPA's submissions to Congress, under the CRA's jurisdiction-stripping provision or this Court's decision in *NRDC v. Hodel*, 865 F.2d 288 (D.C. Cir. 1988). Op. at 40 n.10, 46. The court concluded it did have jurisdiction, however, to review EPA's reclassifications of the waivers from "orders" into "rules." *Id.* at 46. The court also credited two of the four

injuries California asserted for Article III standing and irreparable harm. *Id.* at 48-58, 65-68. It then concluded that EPA's reclassifications were final agency action, *id.* at 58-60, and were likely unlawful in multiple ways, *id.* at 60-65. Finally, heeding this Court's direction that "there is generally no public interest in the perpetuation of unlawful agency action," the court determined that the balance of the equities favored California. *Id.* at 69 (quoting *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)) (cleaned up).

The court's accompanying order denied the motions to dismiss and ordered EPA to restore the status quo "as it existed before EPA's June 12, 2026 press release, as to the four Clean Air Act preemption waiver orders referenced in the press release." First PI Order at 1. The court specifically instructed EPA to "withdraw or correct" its reclassifications "in all public statements, including the June 12, 2026 press release" and prohibited EPA from "giving effect to" the reclassifications. *Id.* at 2.

On September 12, 2026, the court issued a combined opinion and order on California's second preliminary injunction motion, expressly referencing the two waivers reclassified in July and granting the same relief as the first order. Mot., Exh. B ("Second PI Order"). No party attempted to distinguish the first set of reclassifications from the second, and the court's second order is accordingly based

on the reasoning of the memorandum opinion accompanying the first order. *Id.* at 4-5.

## ARGUMENT

### I. An Ordinarily Expedited Schedule Is Appropriate Here

Both statute and this Court's rules provide for expedition of preliminary injunction appeals. *See* Cir. Handbook 20. *Additional* expedition requires a showing of, *inter alia*, irreparable injury that will occur in the absence of ultra-expedition. *See id.* at 34. EPA cannot make such a showing, *infra.* Sec. II, and identifies no other basis for extraordinary expedition, *infra* Secs. III, IV. An ordinarily expedited schedule is thus appropriate.

This Court has set October 19, 2026, as the deadline for required initial submissions. Dkt. No. 2193811. In light of that, California respectfully requests the Court enter the following schedule:

- EPA Opening Brief (no more than 13,000 words): Nov. 16, 2026
- Intervenors' Opening Brief (no more than 9,100 words): Nov. 18, 2026
- California's Response (nor more than 22,100 words): Jan. 8, 2027
- EPA's Reply, if any: Jan. 29, 2027

This would set EPA's opening brief due 30 days after initial submissions, with Intervenors' opening brief due two days later (as EPA proposed in its motion). California will require 45 days to prepare a single combined brief responding to the

two opening briefs and to shepherd its brief through California Department of Justice and client reviews. While the proposed schedule affords California 51 days, that period includes multiple holidays, during which attorney and client availability will be limited.[7]

## II. THE DISTRICT COURT'S ORDERS DO NOT INTERFERE WITH EPA'S RELATIONSHIP WITH CONGRESS

In an effort to establish that it would be injured by the ordinary acceleration applicable to preliminary injunction appeals, EPA argues that the orders at issue interfere with the agency's relationship with Congress. Mot. 11. But the district court's opinion makes clear the orders do no such thing, and EPA's own representations to the district court confirm the point.

The district court's understanding that it could not interfere with Congress's exercise of its constitutional powers or with communications between the two political branches runs throughout the court's opinion. For example, as noted, the court concluded that Section 805 of the CRA or this Court's decision in *Hodel* foreclose judicial review of EPA's reports submitting these waivers to Congress. Op. at 40 n.10, 46.[8] The court also rejected one of California's standing theories on

[7] Neither EPA's nor California's proposed schedules account for the possibility of filings by amici. Should amici briefs be filed supporting EPA, California reserves its rights to seek additional time and words to respond.

[8] To be clear, California disagrees with these preliminary conclusions of the district court on this point. But all that matters for present purposes is what the

(continued…)

the ground that it "lacks redressability as courts may not interfere with the legislative activities of a co-equal branch of government." Op. at 49. The court further expressly recognized that it lacked power to direct Congress's activities, Op. at 57-58, and thus issued orders directing *only EPA* to take (or not take) certain steps, First PI Order; Second PI Order.

EPA itself "does not read the Court's Order to require the agency to attempt to withdraw the submission of these waivers to Congress or otherwise compel or forbid EPA to communicate with Congress." Exh. 1 at 3; Exh. 2 at 2. Consistent with that view, none of the four actions EPA claims to have taken to comply with the orders involve Congress, or EPA's relationship with the Legislative Branch, at all. As EPA tells it, the agency "has communicated the content of the Order *to EPA staff*" with relevant responsibilities; has taken two press releases off of the agency's public website; has conducted an internal survey for other public statements that might be covered by the order (and found none); and has "consulted *within the agency and with the Department of Justice*" about litigation holds related to this case. Exh. 1 at 2 (emphasis added); *see also* Exh. 2 at 2. Put simply, EPA does not think the orders on appeal require the agency to take any action involving its communications with Congress. EPA should not therefore be

---

orders on appeal do, and the court's opinion underscores that they *do not* interfere with prerogatives of Congress or its communications with the Executive Branch.

heard to assert, to *this* Court, that additional expedition is warranted because the orders somehow "interfere" with such communications. Mot. at 11.

Presumably for this reason, EPA attempts to rest its interference argument on something else: the court's conclusion "that EPA's preemption waivers are not rules" within the APA's definition of that term. Mot. 11; *see* Op. 32, 63-64. But a court does not "usurp[]" legislative or executive power by interpreting a statute. *See* Mot. 11. To the contrary, "the final 'interpretation of the laws'" is "the proper and peculiar province of the courts." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024) (quoting The Federalist No. 78, p. 525 (J. Cooke ed. 1961) (A. Hamilton)). The district court stayed entirely within that province, Op. at 63-64 (interpreting 5 U.S.C. § 551; 42 U.S.C. § 7543), when it concluded that "Section 209(b) waivers are properly considered adjudicatory orders under the APA," *id.* at 63. That is not a "judgment peculiarly for Congress to make." Mot. 11 (quoting *Hodel*, 865 F.2d at 319).

Unlike in *Hodel*, EPA's primary case, the court below was not asked to assess the adequacy of the contents of an agency report intended "to inform and further [an] ongoing interbranch negotiation process." 865 F.2d at 319. This Court declined to consider that question—i.e., whether the report "lacked the requisite detail," *id.* at 318 (cleaned up)—because its original jurisdiction was limited to reviewing an agency leasing program that was insufficiently "link[ed]" to the

report, *id.* at 317; because Congress was uniquely situated to determine if the contents of the report sufficed for its own needs; and because there were no "judicially manageable standards" for review of "the contours and content" of the report, which had been "undoubtedly shaped" by the interbranch negotiations to which the Court was not privy, *id.* at 319. Here, the district court's interpretation of the APA definitions of "rule" and "order" involves no interbranch negotiations or any other question outside the judiciary's lane; it is like any other judicial decision holding that an agency misapplied a statute or exceeded its statutory authority.

EPA eventually gets to its real complaint: that members of Congress may be "influence[d]" by the district court's opinion as Congress considers whether and how to act on EPA's submissions. Mot. 11-12. But speculation about how elected legislators—who are not bound by the court's order—may or may not consider a judicial opinion in making independent political decisions does not establish irreparable injury to EPA or any other need for faster review. Indeed, if Congress is inclined to accord respect to the Judiciary's interpretation of statutory text, that is Congress's choice. And, particularly given that such a choice would be entirely consistent with the constitutional roles of these two branches, the possibility of Congress making that choice poses no harm to be prevented by extraordinary expedition.

Particularly given its own characterization of the district court's orders, EPA cannot credibly claim any "interference" with its communications to Congress as a basis for extraordinary expedition of this appeal.

### III. EPA's Disagreement with the District Court's View of Its Jurisdiction Is Likewise Not a Basis for Additional Expedition

EPA dedicates much of its motion to arguing that "[e]xpedited review is also warranted because EPA contends on appeal that the district court enjoined an Executive Branch agency without jurisdiction." Mot. 7. A mere contention that the district court erred in a jurisdictional determination is not sufficient to accelerate an appeal even faster than an ordinary preliminary injunction appeal would proceed. To determine otherwise would swallow the rule, particularly as appeals in this Court involving federal agencies frequently include some jurisdictional dispute or assertion of non-reviewability.

*National Park Service v. National Trust for Historic Preservation in the United States*, 609 U.S. ----, 2026 WL 2564318 (Aug. 31, 2026), does not aid EPA here. *Contra* Mot 7-8. Beyond the fact that *National Park Service* did not involve a request for additional expedition, the disputed jurisdictional question in that case was far from "all" the federal agency relied on to establish irreparable injury. *Nat'l Park Serv.*, 2026 WL 2564318 at *3. "The government has also presented declarations from [many agency officials], attesting to national security and other harms…." *Id.* Here, by contrast, EPA has never provided a single declaration

attesting to irreparable injury of any kind. Instead, EPA relies on its claim about interference with congressional communications, but, as shown above, that claim is belied by the district court's opinion and EPA's own representations below.

Nor do EPA's contentions that the district court overstepped carry water. EPA begins by questioning California's standing but cites no case for the remarkable proposition that the presence of a standing dispute warrants ultra-expedition of an appeal. Mot. 7-8. Moreover, the district court found California had two distinct injuries for Article III standing: the loss of licensee rights, Op. 50-54, and the expenditure and diversion of state resources, *id.* at 54-57. EPA takes issue with only the first. Mot. 8-9. Its reliance on *Trump v. California*, 609 U.S. ---, 2026 WL 2473573 (Aug. 24, 2026) is misplaced because, here, California does not challenge a presidential directive to propose a regulation—an action the Court concluded did not change the legal regime. *Id.* at *4 (directive "imposes no legal requirements on the States"). By contrast, the reclassification of an APA license into an APA rule immediately changes the legal regime applicable to withdrawal proceedings, *see* 5 U.S.C. § 558(c), "result[ing] in the loss of procedural protections to which the State would otherwise be entitled," Op. 53. In any event, even if a credible standing dispute could support EPA's request, EPA cannot establish such a dispute by challenging only one of two bases for California's standing—especially when the unchallenged basis rests on an uncontroverted declaration. *See* Op. 54-55.

EPA also takes issue with the district court's conclusion that Section 805 of the CRA precludes judicial review of EPA's submissions to Congress but not the agency's reclassification of these waivers from "orders" into "rules." Mot. 9-10; *see also* Op. 46. At bottom, EPA disagrees with the district court's conclusion that the agency took two distinct actions—first a reclassification, then a submission. Mot. 9-10. But EPA cannot escape the fact that it previously classified these waivers as "orders" under the APA, declining to follow rulemaking procedures during the waiver proceedings and expressly designating each of these waivers as an order in its final, published actions. The change of a previously finalized position is an action—indeed, it is one that requires acknowledgement of, and explanation for, the change. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) ("An agency may not, for example, depart from a prior policy *sub silentio*."). Changing the classification of an action from an "order" into a "rule" is no different. *See* U.S. Dep't of Justice, *Attorney General's Manual on the Administrative Procedure Act* 12 (1947) ("[T]he proper classification of agency proceedings as rule making or adjudication is of fundamental importance."). That action is also distinct from the submission of these waivers to Congress.

In any event, EPA tellingly fails to explain why it would be problematic for this Court to resolve this disagreement (over whether EPA took one action or two) in the normal course of deciding a preliminary injunction appeal.

## IV. EPA'S PROPOSED SCHEDULE WILL NOT AID JUDICIAL EFFICIENCY

EPA also claims the additional expedition it requests "will preserve judicial and party resources." Mot. 7. As a threshold point, EPA fails to explain how causing the parties to brief, and the Court to decide, this motion for *additional* expedition advances party and judicial economy. Regardless, EPA's efficiency rationale only works if one assumes that the agency will prevail on appeal *and* will do so on grounds that end the case. *Id.*[9] That rationale fails because it would mean every preliminary injunction appeal raising jurisdictional questions (or other potentially dispositive questions) should be expedited beyond the degree already provided by statute and by this Court's rules.

In fact, additional expedition here is likely to hinder, rather than aid, this Court's resolution of this case for at least three reasons. First, EPA proposes to file its reply brief on December 16, 2026 and requests oral argument that same month. That would not only severely constrain the time this Court has to review the briefing before oral argument but would also require the parties and the Court to prepare for oral argument during a period when many participants would otherwise be preparing—or already out of office—for winter holidays. None of this will

[9] EPA asserts that if California prevails, this Court's decision would inform further proceedings below but fails to explain what additional information that affirmation would provide or why waiting for that affirmation would be efficient. Mot. 7.

enhance the outcome. And, tellingly, EPA identifies *no* reason oral argument in December—or any other part of the proposed schedule—is necessary.

Second, EPA claims it is providing California with ample time to respond, Mot. 12, but fails to acknowledge that California will have two briefs to which to respond. California proposes to file one consolidated response, *supra* Sec. I, but that will require more than an additional few days to prepare, and overlength briefs also take additional time for management and clients to review. And if California must file two response briefs, that, too, will require time beyond what EPA provides.

Third, the proposed schedule will inevitably overlap with the briefing in the district court on California's soon-to-be-filed motion for summary judgment. EPA was aware of California's plans more than two weeks before it filed this motion and rejected California's efforts to negotiate a workable schedule and avoid the need for scheduling motions. On EPA's proposed schedule, California's resources will be stretched briefing in both courts without the benefit of a coordinated and negotiated schedule—which is more likely to hamper, rather than improve, the clarity of the State's presentations and thus the work of the courts.[10]

---

[10] To be sure, EPA has now moved to stay the district court's proceedings pending the outcome on appeal and may argue that California can avoid overlapping work by declining to move for summary judgment. But this Court generally expects that cases "will proceed forward expeditiously in the district

(continued…)

## CONCLUSION

EPA's motion for additional expedition should be denied. This Court should set a briefing schedule pursuant to ordinary expedition under Circuit Rule 47.2, such as the schedule proposed in Part I above.

Dated: October 5, 2026

Respectfully submitted,

ROB BONTA
*Attorney General of California*
ANNADEL A. ALMENDRAS
*Senior Assistant Attorney General*
MYUNG J. PARK
*Supervising Deputy Attorney General*

*/s/ M. Elaine Meckenstock*
M. ELAINE MECKENSTOCK
*Deputy Attorney General*

*Counsel for Appellee State of California*

---

court" during an interlocutory appeal from a decision on a preliminary injunction. *Soc'y for Animal Rights, Inc. v. Schlesinger*, 512 F.2d 915, 918 (D.C. Cir. 1975); *see also Wrenn v. District of Columbia*, 179 F. Supp. 3d 135, 140 (D.D.C. 2016) (confirming that proceeding with the case below is "the normal course" during preliminary injunction appeals).

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing motion complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because it contains 4,863 words, excluding the parts of the filing exempted by Fed. R. App. P. 32(f). The filing complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (a)(6) because it was prepared in a proportionately spaced typeface using Microsoft Word in Times New Roman 14-point font.

*/s/ M. Elaine Meckenstock*
M. Elaine Meckenstock

## CERTIFICATE OF PARTIES AND DISCLOSURE STATEMENT

Pursuant to Circuit Rule 27(a)(4), the undersigned counsel states as follows:

**A. Parties and Amici**

Plaintiff-Appellee: Plaintiff in the district court and appellee in this appeal is the State of California.

Defendants-Appellants: Defendants in the district court and appellants in this appeal are the United States Environmental Protection Agency and Lee Zeldin, in his official capacity as Administrator of the United States Environmental Protection Agency.

Intervenors: Intervenor-Defendants in the district court and appellants in this appeal are American Fuel & Petrochemical Manufacturers and American Petroleum Institute.

**B. Disclosure Statement**

A disclosure statement is not required because California is a government party and this is not a criminal case. *See* Fed. R. App. P. 26.1; Cir. R. 26.1.

*/s/ M. Elaine Meckenstock*
M. Elaine Meckenstock