**[ORAL ARGUMENT NOT YET SCHEDULED]**
Nos. 26-5330 & 26-5336

In the United States Court of Appeals
for the District of Columbia Circuit

STATE OF CALIFORNIA,
*Appellee*,
v.
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,
*Appellants*.

STATE OF CALIFORNIA,
*Appellee*,
v.
AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS and
AMERICAN PETROLEUM INSTITUTE,
*Appellants*.

On Appeal from the United States District Court for the
District of Columbia, No. 1:26-cv-02185-BAH

# BRIEF FOR *AMICI CURIAE* SENATE MAJORITY LEADER JOHN THUNE, MAJORITY WHIP JOHN BARRASSO, REPUBLICAN CONFERENCE CHAIR TOM COTTON, AND REPUBLICAN POLICY COMMITTEE CHAIR SHELLEY MOORE CAPITO IN SUPPORT OF APPELLANTS

Donald F. McGahn II
John M. Gore
*Counsel of Record*
Seanhenry VanDyke
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
(202) 879-3939
jmgore@jonesday.com

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Cir. R. 28(a)(1), the undersigned counsel for *amici curiae* certifies the following:

**(A) Parties and Amici.**

*Amici curiae* in this Court are Senate Majority Leader John Thune, Majority Whip John Barrasso, Republican Conference Chair Tom Cotton, and Republican Policy Committee Chair Shelley Moore Capito. All other parties are listed in the Brief for Appellant U.S. Environmental Protection Agency.

**(B) Ruling Under Review.**

References to the rulings at issue appear in the Brief for Appellant U.S. Environmental Protection Agency.

**(C) Related Cases.**

This case was not previously before this Court or any other court aside from the district court from which this appeal was taken. The Brief for Appellant U.S. Environmental Protection Agency identifies four related cases and two related protective petitions for review. Counsel for *amici curiae* is unaware of any additional related cases within the meaning of D.C. Cir. R. 28(a)(1)(C).

*/s/ John M. Gore*
John M. Gore

*Counsel for Amici Curiae*

## RULE 29(D) CERTIFICATION

Pursuant to D.C. Cir. R. 29(d), *amici* certify that a separate brief is necessary because *amici* have a unique perspective and expertise on issues raised in this appeal, and *amici* seek to address those issues for which that perspective and expertise is most relevant. *Amici* believe that a separate brief is required to offer this unique perspective and expertise.

*/s/ John M. Gore*
John M. Gore

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES .......... ii
RULE 29(D) CERTIFICATION .......... iii
TABLE OF AUTHORITIES .......... v
GLOSSARY .......... viii
INTEREST OF AMICI CURIAE .......... 1
INTRODUCTION AND SUMMARY OF ARGUMENT .......... 2
ARGUMENT .......... 5
I. The district court erred by not giving effect to the CRA's bar on judicial review. .......... 5
A. The CRA's judicial-review bar applies to EPA's transmittals and prohibits this action. .......... 7
B. The district court's contrary reasoning was erroneous. .......... 11
C. The district court's holding required a distortion of fundamental administrative and constitutional law principles. .......... 15
II. The district court erred by ignoring Congress's independent authority to determine whether CRA procedures should apply. .......... 19
CONCLUSION .......... 24

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AT&T Co. v. EEOC*,
270 F.3d 973 (D.C. Cir. 2001) ....... 3, 13

*Bennett v. Spear*,
520 U.S. 154 (1997) ....... 10, 12

*California By & Through Brown v. EPA*,
940 F.3d 1342 (D.C. Cir. 2019) ....... 12, 13

*Common Cause v. Biden*,
909 F. Supp. 2d 9 (D.D.C. 2012) ....... 17, 20

*Ctr. for Biological Diversity v. Bernhardt*,
946 F.3d 553 (9th Cir. 2019) ....... 7, 8, 9

*DCH Reg'l Med. Ctr. v. Azar*,
925 F.3d 503 (D.C. Cir. 2019) ....... 15

*Gill v. Whitford*,
585 U.S. 48 (2018) ....... 18

*Indep. Equip. Dealers Ass'n v. EPA*,
372 F.3d 420 (D.C. Cir. 2004) ....... 13, 14

*INS v. Chadha*,
462 U.S. 919 (1983) ....... 20

*Kan. Nat. Res. Coal. v. U.S. Dep't of the Interior*,
971 F.3d 1222 (10th Cir. 2020) ....... 8

*Lewis v. Casey*,
518 U.S. 343 (1996) ....... 18

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....................18

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990)....................11

*Montanans for Multiple Use v. Barbouletos*,
568 F.3d 225 (D.C. Cir. 2009)....................7, 8

*Mullin v. Doe*,
609 U.S. 324 (2026).................... 2, 3, 5, 8, 9, 15, 16, 17, 22

*Nat. Res. Def. Council v. Hodel*,
865 F.2d 288 (D.C. Cir. 1988)....................22, 23

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
583 U.S. 109 (2018)....................2, 6, 10

*Nixon v. United States*,
506 U.S. 224 (1993)....................20

*Reliable Automatic Sprinkler Co. v. CPSC*,
324 F.3d 726 (D.C. Cir. 2003)....................14

*Schmidt v. Lessard*,
414 U.S. 473 (1974)....................19

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................18

*Trudeau v. FTC*,
384 F. Supp. 2d 281 (D.D.C. 2005)....................3, 14

*U.S. Army Corps of Engineers v. Hawkes Co.*,
578 U.S. 590 (2016)....................16

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*United States v. Ballin*,
144 U.S. 1 (1892) .......... 4, 20

*Via Christi Reg'l Med. Ctr., Inc. v. Leavitt*,
509 F.3d 1259 (10th Cir. 2007) .......... 7

*Wash. All. of Tech. Workers v. DHS*,
892 F.3d 332 (D.C. Cir. 2018) .......... 7

**STATUTES**

5 U.S.C. § 801(a)(1)(A) .......... 5, 8

5 U.S.C. §§ 801(a)(1)(C), (b)(1), 802(g) .......... 21

5 U.S.C. § 802 .......... 9, 21

5 U.S.C. § 802(b)–(e) .......... 21

5 U.S.C. § 802(g) .......... 4, 20

5 U.S.C. § 805 .......... 1, 2, 6, 7, 9, 11, 15, 17, 22

**OTHER AUTHORITIES**

171 Cong. Rec. S3051 (May 21, 2025) .......... 21

Black's Law Dictionary (12th ed. 2024) .......... 8, 10

Cong. Rsch. Serv., *The Congressional Review Act (CRA): A Brief Overview*
(Oct. 1, 2026) .......... 6

U.S. Const. art. I, § 5, cl. 2 .......... 4, 19

U.S. Const. art. III, § 1 .......... 5, 21

**GLOSSARY**

| | |
|---|---|
| APA | Administrative Procedure Act |
| CRA | Congressional Review Act |
| EPA | U.S. Environmental Protection Agency |
| JA | Joint Appendix |

## INTEREST OF *AMICI CURIAE*

*Amici curiae* serve in leadership roles in the United States Senate.[1] Congress enacted the Congressional Review Act to reassert its constitutional role in overseeing the rules promulgated by federal agencies. The CRA gives Congress an expedited, streamlined process to consider and disapprove agency rules, and it expressly provides that "[n]o determination, finding, action, or omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805.

In the decision below, the district court disregarded the CRA's clear bar on judicial review. By doing so, the district court inserted the federal judiciary into a process that Congress deliberately reserved for itself and the Executive Branch, and it purported to decide for Congress which matters may receive expedited consideration under Congress's own procedures. As Senate Leaders responsible for exercising the CRA's oversight authority, *amici* have a strong interest in ensuring that the federal courts uphold Congress's prerogative to create and interpret its own procedural rules and respect the CRA's bar on judicial review.

---

[1] *Amici* are Senate Majority Leader John Thune, Majority Whip John Barrasso, Republican Conference Chair Tom Cotton, and Republican Policy Committee Chair Shelley Moore Capito. *Amici* submit this brief under Federal Rule of Appellate Procedure 29(a)(2). No counsel for any party authored any part of this brief. No party or counsel for any party contributed money intended to fund its preparation or submission. No person other than *amici* and their counsel contributed money intended to fund its preparation or submission. All parties have consented to the filing of this brief.

## INTRODUCTION AND SUMMARY OF ARGUMENT

**I.** The Congressional Review Act provides that "[n]o determination, finding, action, or omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805. EPA's transmittal of Clean Air Act preemption waivers to Congress constituted a "determination" and "action" under the plain meaning of those broad terms. *See, e.g.*, *Mullin v. Doe*, 609 U.S. 324, 339, 344 (2026) (explaining in the context of a judicial-review bar that a "determination" may refer to both a "decision" and "the chain of events leading up to a decision"). EPA's transmittal was also "under" the CRA—that is, "by reason of the authority of" that statute. *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 124 (2018). Thus, because EPA's actions and determinations under the CRA are immune from judicial review, this should have been a straightforward case.

The district court avoided this result by reasoning that, in order to justify transmitting the preemption waivers to Congress, EPA must have determined that the preemption waivers qualify as "rules" subject to the CRA. The district court found that this determination, which it called EPA's "reclassification" action, was a separate and reviewable agency action. But EPA's purported "reclassification" action simply does not exist. There is no rulemaking, guidance document, letter to regulated parties, or other legible item constituting the agency action the district court purported to review. Rather, the court took the extraordinary and

unprecedented step of imputing that action to EPA based on reasoning in an EPA press release announcing the transmittals. *See, e.g.*, *Trudeau v. FTC*, 384 F. Supp. 2d 281, 289 (D.D.C. 2005) ("No court has ever found a press release to be a final agency action under the APA."). Moreover, even if EPA had formally announced a change in its legal position regarding the classification of the preemption waivers, such a change in position would not have been independently reviewable: As this Court has repeatedly explained, an agency "express[ing] its view of what the law requires" is not a basis for judicial review. *AT&T Co. v. EEOC*, 270 F.3d 973, 975 (D.C. Cir. 2001).

In the course of imputing a nonexistent agency action to EPA, holding that action invalid, and then purporting to remedy it, the district court distorted fundamental administrative-law and federal-courts doctrines. One is the merger rule: As the Supreme Court recently explained, "[i]n APA cases, an agency's subsidiary decisions merge into the final agency action, which is then subject to review." *Mullin*, 609 U.S. at 344. Thus, even if EPA's legal position regarding whether the preemption waivers qualify as "rules" might otherwise be reviewable, that position merged into EPA's ultimate decision to transmit the waivers to Congress and was only reviewable to the extent EPA's ultimate action was reviewable. *See id.*

Another is the requirement of remedial tailoring: Because the district court acknowledged that it could not review the past transmittals themselves, the only

retrospective relief it ordered was the removal of a press release from EPA's website, coupled with a vague exhortation to "take all necessary steps within the agency's control" to stop a process that is concededly now outside the agency's control. JA0636–37. This relief does nothing to redress California's alleged injuries.

The fact that the district court was unable to rule as it did without flouting the merger rule and fundamental principles of remedial tailoring confirms that its interpretation of the CRA's judicial-review bar was erroneous and should be reversed.

**II.** The decision below encroaches on Congress's constitutional authority in two significant ways. To begin with, it encroaches on Congress's independent constitutional authority to determine the rules of its own proceedings. *See* U.S. Const. art. I, § 5, cl. 2. Congress expressly enacted the CRA as an exercise of that constitutional rulemaking authority. 5 U.S.C. § 802(g). The CRA is a set of internal rules for determining whether a particular resolution qualifies for certain expedited procedures. It does not even arguably "ignore constitutional restraints or violate fundamental rights," and it is therefore within Congress's exclusive authority to interpret and administer under the Rules of Proceedings Clause. *United States v. Ballin*, 144 U.S. 1, 5 (1892). The district court improperly usurped Congress's prerogative to decide which joint resolutions qualify for expedited treatment under Congress's own rules of procedure.

The district court did not merely usurp Congress's authority to administer its internal rules—the court brazenly did so in the face of an express statutory restriction on judicial review. The court's decision thus also encroached on Congress's plenary authority over the jurisdiction of the federal courts. *See* U.S. Const. art. III, § 1. Congress's express limitations on what claims may be heard in federal court are owed serious and careful consideration; as the Supreme Court recently cautioned, courts should not allow litigants to "avoid a judicial-review bar by creative pleading or clever lawyering." *Mullin*, 609 U.S. at 344. But the district court allowed precisely that sort of clever, technical, too-cute workaround in the opinion below. Endorsing such tactics erodes one of Congress's important constitutional checks on the judicial branch.

Due to the combination of these two features, the decision below represents an unusually stark intrusion on Congress's constitutional authority to deliberate and legislate according to its own chosen procedures. This Court should reverse.

## ARGUMENT

### I. The district court erred by not giving effect to the CRA's bar on judicial review.

The CRA sets forth an efficient and streamlined process facilitating Congress's review of federal agency rules. Federal agencies must "submit" each agency "rule"—together with a report on such rule—to Congress before the rule takes effect. 5 U.S.C. § 801(a)(1)(A). Receipt of the report triggers an expedited

set of procedures through which Congress may pass a joint resolution disapproving the rule: Under CRA procedures, committee amendments are prohibited, dilatory motions are barred, and the filibuster is unavailable. *See id.* § 802(a), (d); Cong. Rsch. Serv., *The Congressional Review Act (CRA): A Brief Overview* 2 (Oct. 1, 2026). The CRA thus promotes congressional oversight and enhances federal agency accountability by allowing for fast-track congressional review of agency rulemaking. And CRA review conforms to the requirements of bicameralism and presentment: An agency rule is disapproved only if a joint resolution of disapproval is passed by both chambers of Congress and signed by the President.

Consistent with the streamlined and expedited process Congress enacted and the President signed into law, the CRA further provides that "[n]o determination, finding, action, or omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805. That judicial-review bar applies to any agency action taken "by reason of the authority of" the CRA, including the "action" of transmitting agency rules to Congress for CRA review. *Nat'l Ass'n of Mfrs.*, 583 U.S. at 124. Because such transmittals (and nothing else) are the subject of this lawsuit, it is barred by the CRA's express terms.

In reaching a contrary conclusion, the district court erred by inventing a nonexistent "reclassification" action by EPA, finding that action reviewable, and allowing California to bootstrap its way to judicial review of EPA's transmittals

through review of that "reclassification." The district court's insistence on sidestepping the straightforward application of the CRA forced the court to ignore or distort well-established administrative and constitutional law doctrines, including the merger rule and the requirement of remedial tailoring. The Court should reverse.

### A. The CRA's judicial-review bar applies to EPA's transmittals and prohibits this action.

Congress passed the CRA to facilitate more efficient review of agency rules. Consistent with that goal, it chose to keep the courts out of the CRA process. Section 805 implements that choice in clear and categorical terms: "No determination, finding, action, or omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805. As numerous courts—including this Court—have recognized, this provision "specifically precludes judicial review of an agency's compliance with [the CRA's] terms." *Via Christi Reg'l Med. Ctr., Inc. v. Leavitt*, 509 F.3d 1259, 1271 n.11 (10th Cir. 2007); *see, e.g.*, *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 229 (D.C. Cir. 2009); *Wash. All. of Tech. Workers v. DHS*, 892 F.3d 332, 346 (D.C. Cir. 2018); *Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553, 563–64 (9th Cir. 2019).

The plain meaning of the words used in the CRA's judicial-review bar confirms its comprehensive scope. The CRA prohibits judicial review of any "determination, finding, action, or omission under" the CRA. 5 U.S.C. § 805. The term "determination," as the Supreme Court recently explained, commonly

encompasses both a decision and "the chain of events leading up to a decision." *Mullin*, 609 U.S. at 339. Moreover, "a 'determination' may concern procedural or substantive questions." *Id.* at 340. The term "action" refers to both "[a] thing done" and "[t]he process of doing something," similarly encompassing both the culmination of the agency's activity under the CRA as well as the process of carrying out that activity. *Action*, Black's Law Dictionary (12th ed. 2024). "'Under this chapter' refers to duties the CRA imposes on various actors, whether those duties take the form of determinations, findings, actions, or omissions." *Kan. Nat. Res. Coal. v. U.S. Dep't of the Interior*, 971 F.3d 1222, 1235 (10th Cir. 2020).

The resulting prohibition on judicial review is straightforward and twofold. First, the inclusion of "omission[s]" within the judicial-review bar means that a litigant cannot argue that an agency *should have but did not* transmit a rule to Congress. *See Montanans for Multiple Use*, 568 F.3d at 229. Second, the inclusion of "determination[s]," "finding[s]," and "action[s]" means that a litigant cannot argue that an agency *did but should not have* made such a transmittal. *See Bernhardt*, 946 F.3d at 563–64.

In *Bernhardt*, for example, plaintiffs argued that an agency should not have submitted a rule for CRA review because the CRA contemplates submissions "[b]efore a rule can take effect," 5 U.S.C. § 801(a)(1)(A), and the rule at issue had already gone into effect. The Ninth Circuit held that the plaintiffs were challenging

the agency's (and Congress's) actions under the CRA and their claim was thus barred by Section 805. *Bernhardt*, 946 F.3d at 564.

This is a straightforward case under the foregoing principles. On June 12, 2026, EPA transmitted four Clean Air Act California preemption waivers to Congress for CRA review. EPA also issued a press release announcing that it had done so. On July 22, 2026, EPA transmitted two additional preemption waivers to Congress, accompanied by a similar press release. *That is the sum total of the agency action at issue in this lawsuit*. EPA did not purport to rescind the waivers, determine their validity, affect their implementation or enforcement, or take any similar action. It simply transmitted the waivers to Congress, thereby giving Congress the opportunity to consider whether to review the waivers in accordance with the CRA procedures in 5 U.S.C. § 802. California then sued, seeking vacatur of EPA's actions under the APA. JA0043–44.

On these facts, Section 805 plainly bars California's lawsuit. California's claims challenge a "determination" by EPA—namely, the agency's "final decision" to transmit the preemption waivers to Congress. *Mullin*, 609 U.S. at 339. Even if California's dichotomy between EPA's "reclassification" and "transmission" actions were tenable—more on that later—the agency's purported reclassification was still a "determination" because it was "a discrete decision made by [EPA]" as part of the "process that led to" its "final [transmittal] decision." *Id.*

EPA's transmittal of the preemption waivers to Congress was also an "action," under that term's ordinary, broad meaning of "[a] thing done." *Action*, Black's Law Dictionary (12th ed. 2024). Indeed, any argument by California that this suit does not challenge an "action" would be inconsistent with the proposition that this suit challenges final agency action, as required for California's claims to fall within the APA's cause of action.[2]

EPA's determinations and actions with respect to its CRA submission to Congress were also made "under" the CRA. "[T]he word 'under' is a 'chameleon' that 'must draw its meaning from its context.'" *Nat'l Ass'n of Mfrs.*, 583 U.S. at 124. In this context of official action taken in connection with a statutory scheme, "under" means "pursuant to" or "by reason of the authority of" the CRA. *Id.*; *see also Under*, Black's Law Dictionary (12th ed. 2024). Here, the agency's transmittal of the preemption waivers to Congress was solely by reason of the authority of the CRA. The agency's transmittal action, both procedurally and substantively, would be meaningless and unintelligible apart from the CRA, which provided the claimed authority for, and dictated the effect of, the agency's transmittal.

---

[2] This is not to suggest that the transmittals constitute final agency action under the APA; not every activity that is an "action" under that term's ordinary meaning satisfies the technical definition of final agency action. *See Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). But the transmittals were necessarily an action if they fell within the narrower subset of actions that constitute final agency action under the APA.

In sum, EPA's transmittals of Clean Air Act preemption waivers to Congress constituted both "determinations" and "actions," and those actions were "under" the CRA. Section 805's judicial-review bar therefore applies, and California may not maintain an APA suit seeking vacatur of EPA's transmittals.

**B. The district court's contrary reasoning was erroneous.**

At California's urging, the district court rejected the straightforward analysis set forth above and allowed California's suit to proceed, ultimately granting California a preliminary injunction. To make that result possible, the court imputed to EPA an unannounced, non-public "reclassification" action separate from its transmittal of the waivers to Congress, and it held that "EPA's action in reclassifying prior waiver orders … to now treat those waivers as 'rules'" for CRA purposes was reviewable under the APA. JA0670. That reasoning was erroneous under well-settled principles of administrative law. In any event, even if EPA did take a separate "reclassification" action, the district court erred by allowing California to use that action as a tool to bootstrap a challenge to a second, unreviewable, agency action—namely, the transmittal to Congress.

The district court's threshold error was to conjure an agency action that does not exist. A plaintiff proceeding under the APA must identify a discrete and final agency action; it may not sue merely to challenge an agency's view of the law or public commentary on its legal duties. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S.

871, 890, 899 (1990); *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). But here, EPA never promulgated, published, or served a "reclassification" of the preemption waivers. It did one thing: It transmitted the waivers to Congress with the report the CRA requires. The district court itself could point to no document effecting the supposed reclassification other than the transmittal letters and the press release announcing them—which is simply to say that the "reclassification" and the transmittal are the same act, described twice.

The district court reached the opposite conclusion by reasoning that EPA had previously stated that the waivers were not rules when promulgating them initially, so EPA must have changed its mind on that rule-classification issue—as its press release confirmed—before transmitting the waivers to Congress. JA0670. But this Court has made clear that an agency's reconsideration of its position on a legal issue is not final agency action, as California knows well. In *California By & Through Brown v. EPA*, 940 F.3d 1342 (D.C. Cir. 2019), for example, EPA issued a "Revised Determination" "withdrawing" its previous conclusion that California's greenhouse-gas emission standards for motor vehicles were "appropriate" under Section 202(a) of the Clean Air Act and instead concluding that those standards were "not appropriate." *Id.* at 1348–49. This Court held that California could not challenge the Revised Determination under the APA because the determination did not itself

"have any actual legal effect on the Section 177 states," even though it might lead to a reconsideration and rulemaking process having such an effect. *Id.* at 1352.

*Brown* is not an outlier: This Court has long rejected the position that an agency "takes final action when it embraces one view of the law and rejects another." *AT&T*, 270 F.3d at 975. There is no basis for review "when an agency merely expresses its view of what the law requires … even if that view is adverse to [a] party." *Id.*; *see, e.g.*, *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004) (Roberts, J.) (holding that EPA letter was not reviewable under the APA where the letter itself did not have a "concrete impact" on regulated parties or effectuate "a regulatory change"). Were it otherwise, every legal position an agency takes in the course of planning and executing an unreviewable act would become an independently reviewable "determination," gutting the APA's boundaries on judicial review of agency action and eliminating Congress's prerogative to insulate certain agency actions from judicial review.

Indeed, the unavailability of APA review here should be even clearer than in *Brown*, *AT&T*, *Equipment Dealers*, and similar cases. Each of those cases involved legible, public-facing declarations of an agency's legal interpretation, whereas here, the district court adjudicated the validity of a legal position that it imputed to EPA based on a press release—not a position that EPA had announced in, for example, a guidance document or letter to regulated parties. "No court has ever found a press

release to be a final agency action under the APA." *Trudeau*, 384 F. Supp. 2d at 289. Thus, the district court's review of a legal position expressed only through a press release—without any accompanying reviewable action—is even farther afield than the guidance letters and similar documents this Court has previously found unreviewable.

To be sure, when an agency announces a legal position and then takes concrete regulatory action based on that position, such regulatory action will presumptively be reviewable under the APA, absent a judicial-review bar or other reason why review is unavailable. And a reviewing court may need to decide the validity of the agency's legal position in order to decide whether the regulatory action informed by that position is arbitrary and capricious or contrary to law. But the agency's legal position *itself* cannot be the hook for judicial review under the APA, because agency action is only reviewable "to the extent that it imposes an obligation, denies a right, or fixes some legal relationship." *Reliable Automatic Sprinkler Co. v. CPSC*, 324 F.3d 726, 731 (D.C. Cir. 2003).

Here, that means EPA's legal position that the preemption waivers are rules subject to the CRA's requirements was judicially reviewable, if at all, only during review of a "concrete" action imposing "a regulatory change" based on EPA's legal position. *Equip. Dealers*, 372 F.3d at 427. But the concrete agency action at issue here—transmitting the preemption waivers to Congress—is expressly made non-

reviewable by Section 805. As a result, there is no tenable basis for judicial review under the APA.

### C. The district court's holding required a distortion of fundamental administrative and constitutional law principles.

The district court's path to ruling against EPA and Congress's implementation of the CRA did not stop at misreading Section 805. To hold EPA's purported "reclassification" reviewable and to grant California relief, the court had to set aside two well-established principles: the merger rule, under which subsidiary determinations share the reviewability of the final agency action into which they merge, and the requirement that a remedy be tailored to redress the plaintiff's injury. That the district court's holding required these distortions of basic doctrines confirms that its reading of the CRA was mistaken.

First, the district court's holding violated the merger rule, which is a black-letter principle of administrative law providing that an agency's subsidiary decisions merge into its final agency action, and that review is had—if at all—of the final action alone. *See Mullin*, 609 U.S. at 344. As a corollary, "[i]f the final agency action is unreviewable, then so too are subsidiary determinations." *Id.*; *see DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 506 (D.C. Cir. 2019). The district court's holding stands that rule on its head. Here, the final action was the transmittal to Congress; the purported "reclassification" was, on the district court's own account, a step that made the transmittal possible. *See* JA0669–70. Under the merger rule,

any "reclassification" therefore merged into the transmittal and shares its immunity from review.

The district court sought to escape that conclusion by limiting the merger rule to subsidiary steps that are "advisory in nature" rather than "definitive," and then characterizing EPA's purported reclassification as a "definitive" action that is subject to review in its own right. JA0682 n.11. This distinction is illogical: The more "definitive" a subsidiary determination is, the more plainly it is part of the single course of agency conduct that culminated in the unreviewable act. This distinction is also at war with *Mullin*, which applied the merger rule without any consideration of whether the subsidiary determinations at issue there were "advisory" or "definitive." 609 U.S. at 344.[3]

More generally, the district court's effort to distinguish *Mullin* fails. The district court first observed that *Mullin* arose in the immigration context, where the Executive enjoys broad discretion. JA0681. But the Supreme Court's reasoning did not invoke or rely on the immigration context; rather, it invoked "general administrative-law principles" that govern all APA suits. *Mullin*, 609 U.S. at 344. In any event, this case is about the power of Congress to create, interpret, and follow

---

[3] The district court drew its "advisory" versus "definitive" distinction from *U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590 (2016). *See* JA0682 n.11. But *Hawkes* used that distinction to assess whether an agency determination was final for APA purposes; *Hawkes* did not involve the merger principle or the breadth of a bar on judicial review. *See* 578 U.S. at 597–98.

its own procedural rules—an area even less amenable to judicial review than the immigration context. *See, e.g.*, *Common Cause v. Biden*, 909 F. Supp. 2d 9, 27 (D.D.C. 2012) ("The Supreme Court has long recognized that the power committed in Article I, section 5 provides each House with broad discretion to determine the rules of its proceedings.").

The district court also attempted to distinguish *Mullin* by pointing out that the provision at issue there bars judicial review of determinations "with respect to" a termination, while Section 805 speaks only of activity "under this chapter." JA0681–82. This distinction is insignificant: *Mullin* held that the judicial-review bar applied "under any dictionary definition of 'determination,'" and it treated "with respect to" as confirmation rather than as a dispositive term. 609 U.S. at 339–40. Section 805, moreover, is broader in a respect the district court never acknowledged: It reaches four categories of agency activity—"determination, finding, action, or omission"—whereas the bar in *Mullin* reaches only "determination[s]." Especially after *Mullin*, a judicial-review bar that also sweeps in "action[s]" and "omission[s]" cannot plausibly be interpreted to leave every antecedent step of a CRA submission open to APA attack.

Second, the remedy the district court fashioned confirms that something had gone wrong with the merits. Because the court recognized that it could not order Congress to return or disregard the reports, and because enjoining the transmittals

themselves would have exposed the Section 805 problem, the court ordered EPA instead to "restore the status quo" by withdrawing or correcting its press release and by ceasing to describe the waivers as "rules" in public statements. JA0636–37. "A plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 585 U.S. 48, 73 (2018); *see, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 357 (1996). This order redresses nothing. Every injury California alleged turns on the prospect that Congress will disapprove the waivers or that EPA will someday move to withdraw them. *See, e.g.*, JA0034–36. The reports continue to sit with Congress and the CRA's expedited procedures remain fully available. Scrubbing a press release changes none of that.

That failure of remedial tailoring is not simply a flaw in the district court's order; it exposes a defect in the court's jurisdiction. Redressability is an element of Article III standing, and a plaintiff cannot establish it by obtaining relief that leaves its asserted injuries untouched. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The district court itself acknowledged that California's principal theory of injury—the risk of congressional disapproval—"lacks redressability" because courts may not interfere with the legislative activities of a coordinate branch. JA0686. But then the court turned around and found redressability based on a theory that similarly depended on

the prospect of "withdrawal or invalidation" of the preemption waivers via the CRA. JA0693.

The relief in the district court's order is also largely illusory, at least with respect to preemption waivers already transmitted to Congress, which alone provides another reason for reversal. The court directed EPA to take "all necessary steps within the agency's control" to restore a status quo that the agency does not control, while requiring the agency to do nothing concrete about the only thing that matters—the reports now before Congress. JA0636. This injunction—the only concrete requirement of which is to edit a webpage—offers no meaningful retrospective relief to California while subjecting a federal agency to open-ended judicial supervision and a reporting obligation to the court. *Cf. Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) (per curiam) (injunctive relief must be specific enough that those enjoined know what conduct is required).

In sum, the district court's quest to reach the merits required it to ignore or distort important administrative-law and federal-courts doctrines standing in the way. This fact provides another important reason to correct the court's misinterpretation of the CRA's judicial-review bar.

## II. The district court erred by ignoring Congress's independent authority to determine whether CRA procedures should apply.

The Constitution provides that "[e]ach House may determine the Rules of its Proceedings." U.S. Const. art. I, § 5, cl. 2. "The constitution empowers each house

to determine its rules of proceedings." *Ballin*, 144 U.S. at 5. "It may not by its rules ignore constitutional restraints or violate fundamental rights," but "within these limitations all matters of method are open to the determination of the house, and it is no impeachment of [a] rule to say that some other way would be better, more accurate, or even more just." *Id.* Courts accordingly may not review Senate and House rules ordering each chamber's own business. *See, e.g.*, *Nixon v. United States*, 506 U.S. 224, 228–38 (1993) (finding nonjusticiable a challenge to Senate rule allowing a committee of Senators to hear impeachment evidence and then report to the full Senate); *Common Cause*, 909 F. Supp. 2d at 27 (finding nonjusticiable a constitutional challenge to the Filibuster Rule).

The CRA was adopted "as an exercise of the rulemaking power of the Senate and House of Representatives," with "full recognition of the constitutional right of either House to change the rules … at any time." 5 U.S.C. § 802(g). All agree that when CRA procedures are used to disapprove an agency rule, the constitutional requirements of bicameralism and presentment are satisfied. A CRA disapproval is effectuated through a joint resolution of disapproval that passes both the Senate and House and is presented to the President. *See id.* § 802(a); *INS v. Chadha*, 462 U.S. 919, 951–55 (1983). The CRA thus simply empowers Congress to channel certain legislation into an expedited track where committee amendments are barred, dilatory

motions are unavailable, and debate cannot be extended indefinitely. *See* 5 U.S.C. § 802(b)–(e).

Whether a given agency action qualifies for those procedures is, by design, a question for Congress. Under the procedure outlined in Sections 801 and 802, each chamber decides for itself whether a joint resolution qualifies for expedited CRA procedures. *See* 5 U.S.C. §§ 801(a)(1)(C), (b)(1), 802(g). Congress is not obliged to defer to an agency's characterization of its own actions, nor does the CRA provide for a judicial determination of the qualification question. Rather, Congress may decide for itself when disapproval resolutions are entitled to the CRA's expedited treatment, as the Senate did in 2025 by adopting a point of order—proposed by *amicus* Majority Leader Thune—providing that "joint resolutions that meet all the requirements of Section 802 of the Congressional Review Act … are entitled to expedited procedures under the Congressional Review Act." 171 Cong. Rec. S3051 (May 21, 2025). The question the district court undertook to answer—whether these waivers qualify for review under CRA procedures—is thus a question that the CRA, and ultimately the Constitution via the Rules of Proceedings Clause, leaves for Congress to adjudicate.

Section 805 confirms that Congress itself—and not the courts—decides whether a given agency action is eligible for expedited CRA procedures. Congress has plenary authority over the jurisdiction of the inferior federal courts, *see* U.S.

Const. art. III, § 1, and it exercised that authority by withdrawing judicial review of determinations, findings, actions, and omissions under the CRA. Congress thus made a deliberate choice about who would police compliance with the statute: itself. That choice is unremarkable: "Sometimes Congress decides that the political process is the proper forum for remedying improper conduct." *Mullin*, 609 U.S. at 345.

Congress's choice not to permit judicial review is particularly appropriate here, where the interpretive question involves the interplay between the Executive Branch's reporting to Congress and Congress's internal procedures for considering and passing legislation. As this Court has recognized, when an agency reports to Congress under a congressional reporting requirement, the question of the "fidelity" of the report "to legislatively mandated requirements" is "singularly committed to *congressional* discretion" and is "quintessentially within the province of the political branches to resolve as part of their ongoing relationships." *Nat. Res. Def. Council v. Hodel*, 865 F.2d 288, 318–19 (D.C. Cir. 1988). Just so: Congress may agree or disagree with any agency report characterizing an action as a rule subject to the CRA, and there is neither any legal warrant nor any rational policy reason for the federal courts to interfere with that process.

The decision below ignores the CRA's design and dramatically erodes Congress's authority both to set its own procedural rules and to control the terms of

its information exchange and reporting requirements vis-à-vis the Executive Branch. The district court's decision overrides Congress's judgment that the courts must have no role in CRA disputes, and it then resolves the question of the CRA's applicability for itself, overriding the joint position of both political branches in the process. Whatever else might be said of the wisdom of the CRA, EPA's interpretation of its requirements, or Congress's response to EPA's transmittal letters, those issues fall squarely within the purview of the political branches. *See Hodel*, 865 F.2d at 318–19.

For the foregoing reasons, the district court's decision represents a particularly stark encroachment on Congress's constitutional authority to deliberate and legislate according to its own preferred procedures. The consequences of letting the district court's opinion stand may not be confined to these waivers. If a district court can enjoin an agency from characterizing its own prior actions as "rules" under the CRA, then any party displeased with the prospect of congressional review may seek an injunction that keeps a rule out of Congress's hands in the first place—or that casts a judicial shadow over resolutions already introduced. The CRA's value lies in its speed. A statute designed to permit quick legislative review cannot function if its threshold predicate is litigated in federal court each time it is invoked. This Court should reverse to restore the allocation of authority Congress established.

## CONCLUSION

This Court should reverse the district court's decision.

Dated: November 4, 2026

*<u>/s/ John M. Gore</u>*
John M. Gore

Donald F. McGahn II
John M. Gore
*Counsel of Record*
Seanhenry VanDyke
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
(202) 879-3939
jmgore@jonesday.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that: (1) this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because this brief contains 5,581 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f); and (2) this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in a 14-point Times New Roman font in the text and footnotes.

Dated: November 4, 2026

*/s/ John M. Gore*
John M. Gore

*Counsel for Amici Curiae*

## CERTIFICATE OF ELECTRONIC SUBMISSION

I hereby certify that: (1) any required privacy redactions have been made; (2) the electronic submission of this document is an exact copy of any corresponding paper document; and (3) the document has been scanned for viruses and is free from viruses.

Dated: November 4, 2026

*/s/ John M. Gore*
John M. Gore

*Counsel for Amici Curiae*

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 4, 2026, I caused a true and correct copy of the foregoing brief to be electronically filed with the Clerk of the Court by using the appellate CM/ECF system, which will send notification of such filing to all registered users of the CM/ECF system.

Dated: November 4, 2026

*/s/ John M. Gore*
John M. Gore

*Counsel for Amici Curiae*